UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KINDER MORGAN
OPERATING LP "C", a
Delaware limited partnership,

      Plaintiff,

v.                              Case No.:

LA ASH, INC., a Louisiana corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Kinder Morgan Operating LP "C" ("Kinder Morgan"), sues Defendant, LA Ash,

Inc. ("LA Ash"), and states as follows:

### Parties and Jurisdiction

1.      This is an action seeking damages in excess of $75,000, exclusive of interest,

costs and attorneys' fees and to enforce a warehouseman's lien valued in excess of $75,000.

2.      Kinder Morgan is a Delaware limited partnership that owns and operates a storage

facility in Tampa, Florida.

3.      LA Ash is a Louisiana corporation with its principal place of business at 2651

East Napoleon Street, Sulphur, Louisiana 70663.

4.      The parties to this action have diversity of citizenship and jurisdiction is proper in

this Court pursuant to 28 U.S.C. § 1332.

5.      LA Ash is personally within the jurisdiction of this Court by virtue of the fact that

it has purposefully availed itself of the laws of the State of Florida. LA Ash entered into an

agreement with Kinder Morgan to store commodities in Tampa, Florida. Upon information and

belief, LA Ash has continuous and systematic contacts with the State of Florida through its ongoing business relationships with Florida residents and businesses.

6.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the controversy occurred in this district.

## General Allegations

7.     On January 1, 2007, Kinder Morgan and LA Ash entered into a storage and handling agreement (the "Agreement") for the storage of a commodity known as bed ash (the "Commodity"). A copy of the Agreement is attached as Exhibit A.

8.     On July 22, 2009, Kinder Morgan and LA Ash entered into the First Amendment to Storage and Handling Agreement (the "Amendment"). A copy of the Amendment is attached as Exhibit B.

9.     Pursuant to the Amendment, Kinder Morgan was to perform additional storage and handling of the Commodity.

10.    Pursuant to the Amendment, LA Ash was obligated to make a down payment of $70,000 by August 22, 2009 and six monthly payments of $14,884.33 each, beginning on September 1, 2009.

11.    LA Ash did not make the payments due under the Amendment.

12.    On January 21, 2010, Kinder Morgan sent a letter to LA Ash demanding payment of the amounts due under the Amendment. A copy of the letter is attached as Exhibit C.

13.    LA Ash has not responded to Kinder Morgan's letter.

14.    All conditions precedent to the filing of this lawsuit have been performed, have occurred, or have been waived.

## COUNT I
### (Breach of Contract)

Kinder Morgan realleges and incorporates paragraphs 1 through 14 as if fully stated herein.

15.     The Agreement and the Amendment constitute a binding contract between Kinder Morgan and LA Ash.

16.     LA Ash's failure to pay amounts due constituted a default under the Agreement and Amendment and a breach of contract.

17.     Kinder Morgan fully performed its obligations under the Agreement and Amendment.

18.     As a direct and proximate result of LA Ash's breach, Kinder Morgan has sustained damages.

19.     As a result of LA Ash's breach, Kinder Morgan retained the undersigned and is obligated to pay its attorneys' fees and costs to enforce its rights under the Agreement and Amendment.

WHEREFORE, Kinder Morgan respectfully requests judgment in its favor and against LA Ash for damages, together with prejudgment interest, attorneys' fees, costs, and such other relief as this Court deems just and proper.

## COUNT II
### (Enforcement of Warehouseman's Lien)

Kinder Morgan realleges and incorporates paragraphs 1 through 14 as if fully stated herein.

20.     Kinder Morgan is a warehouseman in that it is in the business of storing goods for hire.

21.   LA Ash is a merchant that regularly deals in the Commodity.

22.   Pursuant to the Agreement and to section 677.209, Florida Statutes, Kinder Morgan has a lien on the Commodity.

23.   Kinder Morgan is currently in possession of the Commodity.

24.   Pursuant to section 677.210(1), Florida Statutes, on February 4, 2010, Kinder Morgan notified all persons known to claim an interest in the Commodity of the scheduled sale of the Commodity. A copy of the notice is attached as Exhibit D.

25.   The scheduled sale is commercially reasonable in time, place and terms.

WHEREFORE, Kinder Morgan requests this Court enter an Order confirming the enforcement of Kinder Morgan's lien on the Commodity described in the Agreement.

Anthony J. Cuva
Florida Bar No. 896251
Brad F. Barrios
Florida Bar No. 0035293
AKERMAN SENTERFITT
SunTrust Financial Centre, Suite 1700
401 E. Jackson Street
Tampa, Florida 33602
E-Mail: anthony.cuva@akerman.com
          brad.barrios@akerman.com
Telephone: (813) 223-7333
Facsimile: (813) 223-5165
Attorneys for Kinder Morgan

LA ASH, INC



**KINDER MORGAN OPERATING LP "C"**
5321 Hartford Street
Tampa, Florida 33619

Terminal and Location:        Tampaplex Terminal, Tampa, Florida (the "Terminal")

Agreement made as of January 1, 2007, by and between Kinder Morgan Operating LP "C", a Delaware Limited Partnership ("KINDER MORGAN") and LA Ash, Inc. ("Customer"), a _Louisiana_ Corporation, whose address is 2651 East Napoleon Street, Sulphur, LA 70663.

Customer's Federal Employers Identification Number:  ___72-1338376___

WITNESSETH:

For and in consideration of the mutual covenants and conditions contained herein, the parties hereto agree as follows:

1.    FACILITIES AND SERVICES

    A.    Scope of Services.  KINDER MORGAN agrees to perform the following services (the "Services") at its Tampaplex Terminal (the "Terminal") with respect to the storage and handling of Customer's commodity or commodities ("Commodity" or "Commodities") listed below:

    KINDER MORGAN's services shall include the receipt of Bed Ash (free flowing weight no higher than 95 pounds per cubic foot) (hereinafter referred to as "Commodity" or "Commodities") by rail cars, loading into warehouse storage, and loading of such Commodity onto River Barge at the direction of Customer.

    The water Depth at the Terminal is -32' MLW with additional 2' tide (salt).

    B.    Term of Agreement.

    The term of this Agreement will commence on January 1, 2007 (the "Commencement Date") and continue for a period of three (3) years from the Commencement Date (the "Initial Term", together with any applicable renewal terms, if any, provided for herein, the "Term") and then shall automatically continue for an additional one year renewal term unless either party provides written notice of its desire not to so renew at least one hundred twenty (120) day(s) prior to the end of the Initial Term.

    C.    Terminal Operating Hours.  Operating Hours: 8:00 a.m. to 4:30 p.m., Mondays through Fridays.

- 1 -



LA ASH, INC.

except for KINDER MORGAN holidays.  No transfer operations will be performed on any of the following holidays: New Year's Day, Martin Luther King Day, Good Friday, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Day After Thanksgiving, Christmas Eve, and Christmas Day or any other holiday granted by KINDER MORGAN to its employees which may become a non-work holiday by custom in the Port of Tampa.

Transfer of Material from railcars or onto barges serving Customer shall be expeditiously performed on a 24 hour per day, 7 days per week basis (weather permitting), as necessary, at no additional charge to Customer for overtime, provided that transfer operations will start at the first available starting time (7:00 a.m. or 7:00 p.m.) after arrival of the vessel at berth or rail car secured at Terminal. No transfer operations will be performed on any of the following holidays: New Year's Day, Martin Luther King Day, Good Friday, Easter, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Day After Thanksgiving, Christmas Day or any other holiday granted by KINDER MORGAN to its employees which may become a non-work holiday by custom in the Port of Tampa.

D.    **Charges.**

(1)    **Handling Charges.**  Customer shall pay KINDER MORGAN as follows:

(a)    Discharge Rail Cars to storage and out by barge (includes wharfage and security fee)          $4.39/NT

(b)    Dockage          Standard Rate at Tamplex at time of barge arrival (currently $2.87 per foot per day)

(c)    Line Handling          Standard Rate at Tamplex at time of barge arrival (currently $1025.00)

(d)    Trucking if required          Cost + 20%

(e)    **Non Free-flowing Commodity.**  If the Commodity is damaged or not free-flowing when delivered to the Terminal, Customer shall pay an additional charge for handling based on the charge for additional services set forth in Section D.(6) below.

(f)    **Excluded Activities.**  The handling charge set forth in D.(1) above does not cover: waiting for railcar or late railcar arrival, waiting for trucks due to arrival after the scheduled time; tarping or securing cargo; separation of cargo; or any materials if supplied.  Customer shall pay for any such services at the rates set forth for additional services in Section D.(6) below and for any standby time as set forth in Section D.(7) below.

(2)    **Storage.**  Throughout the Term of this Agreement, KINDER MORGAN shall store up to 20,000 net tons of Customer's Commodity at the Terminal as per the following storage fees:

- 2 -

LA ASH, INC.

     (a)   0 – 30 days          $0.00 per net ton per day
     (b)   Over 30 days       $0.025 per net ton per day

         Storage area will be limited to silo storage at Tampaplex facility.

     (c)   **Excess Storage Charge (if available).**  Customer shall pay KINDER MORGAN an excess storage charge equal to $0.065 per ton per day of Commodity stored at the Terminal.

(3)   **After Hours Operations.**  For operations outside of Regular Terminal Operating hours, Customer shall pay the current Terminal overtime rate, with a minimum of four (4) hours per overtime operation.

(4)   **Intra Terminal Transfer.**  For transferring Customer's Commodity within the Terminal at the request of Customer and agreed to by KINDER MORGAN, Customer shall pay an additional charges of $85.00 per hour per person per piece of equipment utilized over a four (4) hour minimum.

(5)   **Late Charge.**  Should any of Customer's Commodity remain at the Terminal beyond the termination of this Agreement, Customer shall remain obligated to all of the terms and conditions set forth in this Agreement through the date of such termination and, in addition, shall be obligated to pay an additional charge of $0.30 per ton per day until all Commodity is removed.  Customer will pay and discharge any charge or liability claimed or asserted against KINDER MORGAN as a result of the Customer's Commodities remaining at the Terminal beyond the term of this Agreement.

(6)   **Additional Services.**  For any service or function not specifically provided for in this Agreement, requested by Customer and agreed to and provided by KINDER MORGAN, there shall be a charge to Customer equal to the sum of (a) the cost of KINDER MORGAN's labor used on such services, at a rate of either (i) $28.915 per hour of labor involved(4 hour minimum), if such work is performed during regular operating hours, and (ii) $45.408 per hour of labor involved(4 hour minimum), if such work is performed during overtime hours; plus (b) the cost of materials and equipment used for such additional work plus 15% of such sum; plus (c) the amount of charges made by contracted services, if any, plus 15% of said sum.

(7)   **Standby Time.**  Customer shall pay KINDER MORGAN $400.00 per hour per employee for all standby time resulting from Customer's failure to perform its obligations hereunder, including standby time resulting from vessel, barge, truck, or rail car delays.

(8)   **Certified Railcar and Truck Weights.**  At Customer's request, KINDER MORGAN shall provide certified railcar weights and truck weights if required by Customer at the standard KINDER MORGAN rates.  KINDER MORGAN shall prepare and distribute reasonable bills of lading or other forms relating to shipments by each Truck, KINDER MORGAN shall retain on files copies of the bills of lading for three years following issue.

(9)   **Diesel Fuel.**  Within 5 days following the conclusion of each month, KINDER MORGAN shall calculate the monthly average price of heating oil for the prior month using the daily closing price for heating oil posted on the NYMEX.  If the monthly average price for heating oil for the prior month is greater than $2.25 per gallon, the Inbound (Rail or Vessel) Unload Charge shall be increased by an amount equal to (a) 10% multiplied by (b) the amount by which the monthly average price for heating oil for the prior month

- 3 -

LA ASH, INC.

exceeds $2.25 per gallon.

<u>Example:</u> If the NYMEX price is $1.80/gal and your handling rate $5.25/ton, the adjusted rate would be increased by  $5.25/ton x [(1.80-2.25) ÷ 2.25 x .10] = $.105/ton

Therefore, the new rate Is 5.25 + .105 = $5.36/ton

(10)   <u>Escalation.</u>  Effective January 1, 2008,  and each subsequent January 1, all charges or the charges set forth in Paragraphs D. Inclusive are subject to annual escalation by the percentage change In the GDP index as reflected in the Implicit Price Deflators for GDP Report per Quarter II of the preceding year.

E.   <u>Minimum Guaranteed Throughput.</u>

Customer agrees that It will deliver at least 125,000 net tons of inbound Commodity to the Terminal during each Contract Year of this Agreement (the "Minimum Guaranteed Throughput"). If, at the end of any Contract Year, Customer has failed to deliver the Minimum Guaranteed Throughput to the Terminal for handling by KINDER MORGAN, then within 10 days after receiving an invoice therefore from KINDER MORGAN, Customer shall pay KINDER MORGAN an amount equal to (i) the difference between the Minimum Guaranteed Throughput for such Calendar Year less the actual Commodity delivered to the Terminal during such Calendar Year, multiplied by (ii) the Base handling charge set forth In Section D.(1) for inbound Commodity, as escalated from time to time.  All shortfall tons will be Invoiced at the appropriate Discharge Rate (Base or Excess), depending upon volume, as escalated at the time of the shortfall.

F.   <u>Billing Address.</u>

LA Ash, inc.
2651 East Napoleon Street
Sulphur, LA 70663

2.   OPERATIONS

(a)   <u>General.</u>  Except as provided for herein, the Terminals shall be used by Customer only for the storage of the Commodities specified above; provided, however, that anything in this Agreement to the contrary notwithstanding, Customer shall not deliver to the Terminal any Commodity which (a) would in any way be injurious to the Terminal or any of KINDER MORGAN's equipment or property, (b) would render the Terminal or any of KINDER MORGAN's equipment or property unfit, after cleaning, for the proper storage of other customers' commodities, (c) may not lawfully be stored at the Terminal, or (d) does not match, in all material respects, the specifications for the Commodity that Customer provides to KINDER MORGAN in advance of such Commodity's delivery to the Terminal.

(b)   <u>Truck Scheduling.</u>  Customer shall provide KINDER MORGAN with a weekly schedule for truck deliveries and/or pick ups at the Terminal.

(c)   <u>General Scheduling.</u>  Prior to the delivery by Customer of Commodity to the Terminal, Customer shall provide KINDER MORGAN information regarding the amount of Commodity to be delivered, the designation of storage or type of Commodity (if applicable), and any other information reasonably requested by KINDER MORGAN.

- 4 -

LA ASH, INC.

(d) **Terminal Policies/Manuals.** Customer agrees that it will comply with, and KINDER MORGAN's performance hereunder is subject to, all Terminal operating policies and procedures that are issued from time to time by KINDER MORGAN.

(e) **Additional Equipment.** Any fixtures or equipment placed in the Terminal by Customer or KINDER MORGAN at the request of Customer and paid for by the Customer shall be considered property ("Property") of the Customer. Title to such Property shall; vest in KINDER MORGAN upon termination of the Agreement unless KINDER MORGAN shall agree in writing that the Customer may remove such Property at termination of the Agreement. Customer shall pay for the restoration of the Terminal and surrounding area, and pay for all damage to KINDER MORGAN's Terminal or facilities caused by the presence or removal of any such Property. Unless otherwise provided, taxes, insurance, maintenance and operating costs related to the Property will be paid by KINDER MORGAN and are excluded from the rates charged to the Customer for warehousing services.

3.   DELIVERY OF COMMODITY

Customer shall ensure that the Commodity is delivered to the Terminal in railcars.

KINDER MORGAN reserves the right to inspect all [railcars/barges/trucks] upon arrival and to either reject those containing Commodities that are of excessive temperature, moisture, fines, metal or other contamination, or size in the event it is anticipated that the Commodity might damage or slowdown the Terminal's equipment or to assess reasonable additional charges for handling and unloading such [railcars/barges/trucks]. KINDER MORGAN further reserves the right to inspect all railcars, barges, rail cars, and trucks upon arrival to ensure that such vehicles comply with the requirements for such vehicles specified herein. Notwithstanding the above, KINDER MORGAN shall have no responsibility for any failure to so inspect Commodity, [railcars, barges, trucks] and Customer bears all responsibility for additional charges related to the quality of any Commodity, [raicars, barge, or truck].

4.   RECEIPTS, DELIVERIES, CUSTODY TRANSFER AND REPORTS

For the charges herein, KINDER MORGAN shall handle the Commodities into and out of the Terminal and provide facilities necessary to perform such handling. All receipts and deliveries of Commodities shall be arranged by Customer, and KINDER MORGAN shall be responsible only to receive or discharge the Commodities at its designated facilities from or to those vehicles, marine vessels or railcars which KINDER MORGAN determines to be compatible with KINDER MORGAN's handling facilities.   In particular, all receipts of any Commodities from railcars, barges, or truck shall be arranged for and provided by Customer. In receiving Commodity from railcars, barges, and trucks, KINDER MORGAN shall be responsible for Commodity after it is offloaded from such vehicle. In delivering Commodity to railcars, barges, and trucks, KINDER MORGAN shall be responsible for the Commodity until it is loaded onto such vehicle or barge. In no event shall KINDER MORGAN be responsible for any loss or damage of any kind to Commodity before the Commodity is offloaded from or loaded onto the transporting vehicle. Unless otherwise agreed to, KINDER MORGAN agrees to furnish only inbound and outbound reports upon receipt or delivery and monthly stock reports as to the quantity received, handled and in storage on KINDER MORGAN's reporting forms and to prepare bills of lading as required. KINDER MORGAN will execute shipments out of the Terminal on a FIFO (First In, First Out) order and agrees to maintain all Commodity by Customer item number.

5.   PAYMENTS

(a) **Charges.** Customer agrees to pay KINDER MORGAN all fees, expenses, and charges specified in this Agreement within 30 days of the date of invoice from KINDER MORGAN detailing such

charges. KINDER MORGAN may send invoices for handling charges and other fees as soon as it receives Customer's Commodities at the Terminal.

(b) Other Invoiced Charges. Customer also agrees to pay KINDER MORGAN for all other fees, expenses, and charges specified in this Agreement within 30 days of the date of invoice from KINDER MORGAN detailing such charges. KINDER MORGAN may send invoices for fees, expenses, and charges and other fees as soon as it receives Customer's Commodities at the Terminal.

(c) General. If any payment required under this Agreement is not paid when due, it shall bear interest at the rate of 1.5% per month for each month or portion of a month thereafter during which such overdue amount remains unpaid. All payments shall be made to KINDER MORGAN via wire transfer to the Wells Fargo Bank, NA, ABA No. 121 000 248, Account No. 412 104 9514 or mailed to the designated address on the invoice. Customer shall identify by number the KINDER MORGAN invoices being paid in the wire transfer comments or on the check stub. Customer shall be responsible to pay any bank charges incurred by Customer when remitting funds via wire transfer. Acceptance by KINDER MORGAN of any payment from Customer for any charge or service at any time shall not be deemed a renewal of this Agreement or waiver by KINDER MORGAN of any default by Customer hereunder. Customer agrees that KINDER MORGAN will not be obligated to provide any services as provided for in this Agreement when Customer fails to pay invoices when due. In the event Customer disputes any portion of an invoice, Customer shall promptly notify KINDER MORGAN in writing of the disputed portion and pay the undisputed portion according to the terms of this paragraph.

(d) Additional Security. If, at any time throughout the term of this Agreement, KINDER MORGAN determines in its sole good faith discretion, that Customer's credit rating has materially worsened, Customer shall provide, at KINDER MORGAN'S request, additional security for its performance hereunder in form and amount reasonably satisfactory to KINDER MORGAN. The form of such additional security may include, but need not be limited to the prepayment of charges hereunder, or the posting of a letter of credit or bond securing Customer's payment hereunder.

6.   OPERATING HOURS, DEMURRAGE AND THIRD PARTY ACCESS

(a) General. The Terminal shall be operated by KINDER MORGAN to perform its functions herein agreed to be performed during the hours set forth in Section 1.C. above except as such hours may be changed from time to time in applicable bargaining agreements between KINDER MORGAN and the collective bargaining representatives of KINDER MORGAN's employees or similar agreements.

(b) Demurrage. KINDER MORGAN shall not be responsible for any loss, damage, demurrage, or expense due to delay in loading or unloading of Customer's Commodities.

(c) Third Party Access. Customer agrees that access to the Terminal by (1) trucks not owned by Customer or (2) any party sent to the Terminal who is not an employee of Customer to provide services (both (1) and (2) hereinafter referred to as a "Third Party" or "Third Parties") on behalf of Customer may, in the sole discretion of KINDER MORGAN, be conditioned upon prior execution of an access agreement between KINDER MORGAN and the Third Party. Customer agrees (i) to assist KINDER MORGAN in obtaining execution of such access agreements from Third Parties, (ii) to indemnify KINDER MORGAN for any claims, losses, suits, liabilities and expenses caused by the Third Party; and (iii) to ensure that such Third Parties maintain insurance at levels similar to those maintained by similar responsible companies in similar industries.

-6-

7. TAXES AND ASSESSMENTS

Customer agrees to pay all taxes and assessments, that may be assessed by any governmental authority against any Commodity or property of Customer or against KINDER MORGAN (except for income, franchise and real estate taxes) with respect to the receiving, storing, handling, shipping or disposing of any Commodity or property of Customer. Customer further agrees to pay any existing or newly created or undisclosed tax in the form of a so-called "value added" tax, sales tax, rent tax, excise tax, service charge or similar tax assessment. In addition, Customer shall pay its direct costs or pro rata share of any inventory or use tax or so-called spill tax, pollution control tax or emission fee which may be assessed against the Terminal, any Commodity, the Handling Charge, other charges hereunder or against the Services. Furthermore, Customer shall reimburse KINDER MORGAN for any taxes or charges KINDER MORGAN may be required to pay in regard to the Commodity or property of Customer.

8. INSURANCE

KINDER MORGAN does not and shall not insure Customer's Commodity or property, nor property of others. Insurance, if desired by Customer or Customer's contractors, shall be carried by Customer or its contractors at their own expense. If Customer carries any insurance on the Commodities or Customer's property, Customer's insurance carrier shall endorse the policies to waive subrogation against KINDER MORGAN. Copies of such endorsements shall be furnished to KINDER MORGAN upon request.

At all times during the term of this Agreement, Customer shall carry and maintain in full force and effect, the following insurance coverages. If Customer employs common carriers trucks to lift product at our terminals, it is Customer's sole responsibility to ensure that common carriers' insurance coverage fully complies with all requirements outlined below. KINDER MORGAN reserves the right to require Customer to provide evidence of coverage upon request.

(a) <u>Workers' Compensation Insurance</u> . Workers' Compensation Insurance in accordance with the statutory requirements of the state(s) in which the terminal(s) to which this Agreement is applicable are located and Employer's Liability   Insurance with policy limits not less then $1,000,000 per occurrence.

(b) <u>Commercial General Liability Insurance.</u> Commercial General Liability Insurance, with a combined limit of not less than $2,000,000 per occurrence for bodily injury and property damage arising from the obligations undertaken by each  party in this Agreement and covering that party's contractual liability assumed pursuant to this Agreement.

(c) <u>Automobile Liability Insurance.</u> Customer shall carry, at all times during the term of this agreement, at Customer's sole cost and expense, Automobile Liability Insurance covering all of Customer's vehicles and all other vehicles, whether leased, hired or borrowed, that withdraw product from KINDER MORGAN terminal facilities on behalf of Customer, including but not limited to Customer's carriers, Customer's wholesalers, and Customer's customers (hereinafter, collectively "Customer-Designated Trucks") with a combined limit of not less than $2,000,000 per occurrence for bodily injury and  property damage.

All insurance policies carried by Customer hereunder, except Workers' Compensation insurance, shall name KINDER MORGAN, its parents, affiliates and subsidiaries, and their respective directors, officers, agents and employees as additional insureds.

All insurance policies of Customer shall include waiver of subrogation or its equivalent against KINDER MORGAN, its parents, affiliates and subsidiaries, and their respective directors, officers, agents and employees.

- 7 -

LA ASH, INC.

(d)  **Product Damage/Loss Insurance.** Insurance for Customer's products, if any, that may be desired by Customer shall be carried at Customer's sole expense.

9.  **FORCE MAJEURE, INDEMNITY, AND GOVERNMENTAL RESTRAINT**

(a)  **Force Majeure.** Neither party shall be liable for contamination, loss of, damage to or destruction of any Commodities or property, or for any delay or nonperformance, when any of the foregoing is caused in whole or in part by any cause not within the control of said party, whether now or hereafter existing (a "Force Majeure Event"), including without limitation, any act of God or of a public enemy or terrorist act, or by labor troubles, strikes, lockouts, riots, nonavailability of machinery, embargoes, congestions or interventions, or failure or delay of manufacturers or suppliers to deliver same, except that Customer shall be responsible to pay all charges arising from this Agreement when due regardless of any Force Majeure Event. If either party's ability to perform its obligations under this Agreement is affected by a Force Majeure Event, such party claiming such inability shall (i) promptly notify the other party in writing of such Force Majeure Event and its cause and (ii) promptly supply such available information about the Force Majeure Event and its cause as may be reasonably requested by the other party. The party affected by a Force Majeure Event shall exercise its reasonable efforts to eliminate the disabling effects of such Force Majeure Event as soon as and to the extent reasonably practicable (except that such party shall have the sole discretion to settle any of its own labor disputes, strikes, or to terminate any of its own lockouts).

(b)  **Indemnity.**

(1)  Except as provided in the paragraph entitled "Limitation of Liability" hereof, KINDER MORGAN shall indemnify and hold Customer harmless from and against all claims, demands, losses, fines, penalties, expenses (including reasonable attorneys fees) costs, suits, and liabilities (collectively "Claims") caused by or resulting from negligent or intentional wrongful acts or omissions on the part of KINDER MORGAN, its employees, agents, or contractors in the performance of this Agreement. Customer shall indemnify and hold KINDER MORGAN harmless from and against all Claims, caused by or resulting from (i) negligent or intentional wrongful acts or omissions on the part of Customer, its employees, agents or contractors (including, but not limited to, any contractors transporting Commodities to or from the Terminal) in the performance of this Agreement, (ii) any breach of this Agreement by Customer; and (iii) to the extent not caused by the negligent or wrongful acts or omissions of KINDER MORGAN, its employees, agents or contractors, any exposure to the Commodity. In the event that any Claim is caused in whole or in part by the concurrent negligent or intentional wrongful acts or omissions of KINDER MORGAN, its employees, agents or contractors on the one hand, and Customer, its employees, agents or contractors on the other hand, then this obligation to indemnify shall be comparative and each party shall indemnify the other to the extent that such party's negligent or intentional wrongful acts or omissions were the cause of such Claim. KINDER MORGAN shall in no event be liable for Claims arising from loss of or damage to any Commodity or property of Customer except when and to the extent caused by the negligent or intentional wrongful acts or omissions of KINDER MORGAN or its employees, agents, or contractors; provided, however, that KINDER MORGAN shall not be liable for any such loss or damage to the extent that such Claim is covered by Customer's insurance.

(2)  Notwithstanding anything contained herein to the contrary, to the extent that Customer's Commodities include Commodities owned by Customer's affiliates or customers of

- 8 -

LA ASH, INC.

Customer or its affiliates, Customer shall indemnify and hold KINDER MORGAN and its officers, directors, employees and agents harmless from and against all Claims by Customer's affiliates or customers of Customer or its affiliates to the extent that such Claims or any recovery in connection with such Claims would not have been available to Customer hereunder had Customer owned the relevant Commodities.

(c) **Exclusive Remedy.** Customer agrees that the remedies provided in this Agreement shall be, subject to the limitations set forth in paragraph 10, its sole and exclusive remedy for Claims related to the activities undertaken in connection with this Agreement and any, Customer hereby waives any rights it may have to bring any additional causes of action against KINDER MORGAN.

(d) **Governmental Restraint.** If KINDER MORGAN's use of all or part of the Terminal for the storage and handling of any Commodity shall be restrained or enjoined by judicial process, terminated by any governmental or regulatory authority, by right of eminent domain, by the owner of leased land, or for any other reason, KINDER MORGAN, upon being notified of such restraint, enjoinder or termination, shall notify Customer and KINDER MORGAN may (i) terminate this Agreement as to the affected portion of the Terminal and Services on the effective date of said restraint, enjoinder, or termination, or (ii) provide to Customer reasonably comparable substitute Services. Upon such termination, Customer shall be obligated to pay all charges arising from such termination as if this Agreement had expired by its own terms.

10. **LIMITATION OF LIABILITY**

(a) Unless specifically set forth elsewhere in this Agreement, KINDER MORGAN shall in no event be liable for the loss, deterioration, or shrinkage of Commodity unless caused by the negligence or willful misconduct of KINDER MORGAN. In consideration of the charges set forth in Section 1.D. above (it being recognized that higher charges would be made but for the limitation of liability set forth in this paragraph), it is understood and agreed that in the event of loss or damage to Commodities for which KINDER MORGAN is liable in accordance with this Agreement, KINDER MORGAN shall not be liable to Customer for more than the Actual Cost (as hereinafter defined) to Customer of any lost or damaged Commodities, less salvage value. Notwithstanding the above, KINDER MORGAN shall in no event be responsible for losses of the Commodity resulting from storage of the Commodity. KINDER MORGAN shall have no liability to Customer unless a written claim is delivered to KINDER MORGAN by Customer within two months after KINDER MORGAN reports the alleged loss to the Customer or the Customer discovers the alleged loss, whichever is earlier. Customer shall make no deductions from any invoice presented by KINDER MORGAN pending the resolution of any claim.

(b) KINDER MORGAN SHALL IN NO EVENT BE LIABLE FOR LOST PROFITS OR INDIRECT, SPECIAL INCIDENTAL OR CONSEQUENTIAL OR PUNITIVE DAMAGES NO MATTER HOW LOSS OR DAMAGE SHALL HAVE OCCURRED INCLUDING, BUT NOT LIMITED TO, LOSS OR DAMAGE CAUSED BY KINDER MORGAN'S NEGLIGENCE, EVEN IF KINDER MORGAN HAS BEEN NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGE. EXCEPT AS EXPRESSLY PROVIDED HEREIN, THERE ARE NO GUARANTEES OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHETHER ARISING BY OPERATION OF LAW OR OTHERWISE.

(c) KINDER MORGAN shall be responsible for loss or damage to a rail car, or truck, or their respective equipment or cargo only to the extent such loss or damage results from the negligence or willful misconduct of KINDER MORGAN or its employees or agents, occurs during the progress of the work and KINDER MORGAN is notified in writing of the occurrence of such loss or damage prior to such vehicle's departure from the Terminal. To the extent that KINDER MORGAN can

- 9 -

cure such loss or damage without cost to Customer and in a reasonable time period, it shall have the right to do so without additional liability to Customer.

(d)    Notwithstanding anything herein to the contrary, KINDER MORGAN's liability for activities taken in connection with this Agreement, whether such liabilities arise under contract, indemnity, tort, or any other legal theory, shall in no event exceed 25% of the total amount of any charges collected by KINDER MORGAN under this Agreement during the year in which the liabilities arose.

(e)    Loss Allowance. Notwithstanding anything contained herein to the contrary, regardless of the cause of any loss or damage to Customer's Commodity, KINDER MORGAN shall not be liable for the loss of or damage to Customer's Commodity.

11.    COMMODITY INFORMATION, MATERIAL SAFETY DATA SHEETS AND DOCUMENTATION

(a)    General. Customer agrees to execute in its name, pay for and furnish to KINDER MORGAN at the Terminal all information, material safety data sheets, certificates of analysis, documents, labels, placards, containers and other materials and data which may be required by statutes, ordinances, rules or regulations ("Regulations") of any public authority relating to the describing, packaging, receiving, storing, handling, shipping or disposing of any Commodities to or from the Terminal, together with detailed written instructions as to their use and disposition. Customer agrees to notify KINDER MORGAN of any changes in any of the information or materials identified above and to supply revised information or materials. Customer agrees that KINDER MORGAN may report to any governmental or regulatory body as required by the Regulations, in regard to Commodities and activities of Customer, and Customer agrees to provide such information to KINDER MORGAN as necessary, in KINDER MORGAN's opinion, to comply with the Regulations.

(b)    Right to Know. KINDER MORGAN may have an obligation to furnish Commodity names and constituents to governmental authorities and employees or others handling or exposed to the Commodities in connection with Right to Know, worker exposure, or similar Regulations. KINDER MORGAN may also have an obligation under applicable laws and Regulations to furnish this information to the general public. Customer agrees to furnish the common or chemical name of all Commodities and their constituents to KINDER MORGAN prior to Customer's Commodities entering the Terminal so that KINDER MORGAN can comply with such laws and Regulations. Customer shall have the responsibility for filing and pursuing any exemption from disclosure pursuant to such laws and Regulations which Customer may desire.

12.    REGULATORY COMPLIANCE

Governmental or regulatory bodies may cause KINDER MORGAN to incur additional cost or expense to comply with applicable Regulations, including but not limited to costs or expenses relating to (1) making additions or modifications to facilities at the Terminal, (2) changing methods of operation to comply with laws and governmental Regulations, (3) implementing testing or verification programs, (4) implementing the conditions of any permit necessary to operate the Terminal, (5) preventing, reducing, controlling or monitoring any emission, exposure or discharge into the environment, or (6) paying additional fees, taxes or assessments which may be assessed against the Terminal, any Commodity, the handling charges other charges hereunder, or against the services provided under this Agreement (costs and expenses arising from such requirements are hereinafter referred to as "Compliance Costs"). Compliance Costs shall include the actual or pro rata cost of additional expense, changes or additions (including engineering and overhead expense) and subsequent direct and indirect costs, as may be escalated, of operating and maintaining such changes or additions, including the cost of changes in staffing for operations at the Terminal. If KINDER MORGAN is required to expend Compliance Costs, KINDER MORGAN may either

- 10 -

(i) notify Customer of the Compliance Costs, including a request that Customer reimburse KINDER MORGAN for such Compliance Costs, or (ii) terminate the affected Services or facilities from this Agreement before the date upon which KINDER MORGAN must incur Compliance Costs by providing written notice thereof to Customer. Upon notice from KINDER MORGAN of (i) above, Customer shall elect either (i) to pay Compliance Costs or (ii) terminate the affected Services or facilities from this Agreement before the date upon which KINDER MORGAN must incur Compliance Costs. Customer must make its election by advising KINDER MORGAN of its decision, in writing, thirty (30) days after receipt of said notice from KINDER MORGAN or such shorter time as may be necessary considering the effective date for compliance. If Customer elects to pay the Compliance Costs, it shall include payment for KINDER MORGAN's estimate of the Compliance Costs with such notice. If Customer does not notify KINDER MORGAN of its election within the time period set forth above, Customer shall be deemed to have elected to reimburse KINDER MORGAN for the Compliance Costs, and KINDER MORGAN may either terminate this Agreement or pay the Compliance Costs. If KINDER MORGAN elects to pay the Compliance Costs, Customer shall reimburse KINDER MORGAN for the Compliance Costs upon presentation of invoice.

13.   PUBLIC USE

This Agreement is made as an accommodation to Customer and in no event shall KINDER MORGAN's services hereunder be deemed to be those of a public utility or common carrier. If for any reason the Terminal or any of KINDER MORGAN's facilities becomes a public utility or common carrier, then, and in that event, at the option of KINDER MORGAN and upon Customer's receipt of KINDER MORGAN's written notice, KINDER MORGAN may (a) restructure and restate this Agreement or (b) terminate this Agreement on the effective date of such action as to the affected Services.

14.   DEFAULT

The following shall be considered "Events of Default" under this Agreement:

(a)   A party fails to pay any monies due hereunder on the date when due;

(b)   Except as set forth in paragraph 14(a), a party fails to comply in any material respect with any terms or conditions of this Agreement and such party has failed to cure such noncompliance within 30 days after receiving notice thereof from the other party, or where cure of such failure is not possible within such 30 day period, the party fails to commence cure of such failure within such 30 day period and to diligently and in good faith pursue such cure;

(c)   A party or any person owning fifty percent or more of the voting securities or interests entitled to vote of either party (a "Controlling Person") commences a voluntary case as a debtor concerning such party or such Controlling Person under the United States Code entitled "Bankruptcy" as now or hereafter in effect, or any successor thereto (the "Bankruptcy Code");

(d)   An involuntary case against a party or Controlling Person is commenced under the Bankruptcy Code and relief is ordered against such party or Controlling Person or the petition is controverted but is not dismissed within 30 days after the commencement of the case

If an Event of Default occurs, then the non-defaulting party may terminate this Agreement and pursue any remedies available to it under law. Additionally, in the event of default by Customer, Customer shall immediately pay KINDER MORGAN a sum equal to (i) the lesser of (A) the handling charge set forth in 1.D.(1) above multiplied by the Minimum Guaranteed Throughput for the whole unexpired term hereof or (B) the handling charge set forth in 1.D.(1) above multiplied by the Minimum Guaranteed Throughput for 12 months], plus (ii) any other sums owed by Customer to KINDER MORGAN.

Additionally, in the event of default by Customer, Customer shall immediately pay KINDER MORGAN a sum equal to the handling charge set forth in 1.D.(1) above multiplied by the Minimum Guaranteed Throughput for the whole unexpired term hereof plus any other sums owed by Customer to KINDER MORGAN.

15.   LIENS

Title to the Commodities shall at all times remain with Customer or its assignees, subject to any lien asserted by KINDER MORGAN. At all times to the extent permitted by law, KINDER MORGAN shall have all applicable statutory liens upon all Commodities at any time in the Terminal for the charges set forth herein whether incident to Commodities then on the Terminal or otherwise and in connection with any and all other agreements between KINDER MORGAN and Customer, and Customer hereby authorizes KINDER MORGAN to file any financing statement, together with any amendments or continuations thereof, without the Customer's consent.

16.   ASSIGNMENT

This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of each of the parties hereto; provided, however, that Customer shall not transfer, subcontract or assign this Agreement, in whole or in part, without the prior written consent of KINDER MORGAN, and any attempted transfer, subcontract or assignment without such consent shall be null and void and, at the option of KINDER MORGAN, shall constitute a default by Customer hereunder. The consent of KINDER MORGAN to such transfer, subcontract or assignment shall not operate to release Customer of its obligations under this Agreement. Customer shall not permit any other party to store Commodity at the Terminal on any basis without KINDER MORGAN's prior written consent. If Customer permits storage by other parties, Customer agrees to indemnify, defend and hold KINDER MORGAN harmless at Customer's sole cost from and against any claims, liability or expense asserted by such other party against KINDER MORGAN. Any such storage without KINDER MORGAN's prior written consent shall, at KINDER MORGAN's sole option, constitute a default by Customer. Further, In the event Customer, in the opinion of KINDER MORGAN, sells all or substantially all of its assets to another party, KINDER MORGAN shall have the right, at its sole option, to terminate this Agreement.

17.   NOTICES

Notices to be given hereunder shall be deemed properly served on Customer when delivered in writing, either in person, by fax, express delivery, or certified mail to Customer at the address shown on page one and on KINDER MORGAN when so delivered to KINDER MORGAN at the address shown on page one or, in either case, al such other address as shall be specified in a notice meeting the requirements of this paragraph.

18.   CHANGE OF OWNERSHIP

Customer shall advise KINDER MORGAN in writing of any change in Commodity ownership while in the Terminal. If any of Customer's Commodity is sold, exchanged, or otherwise changes ownership while in the Terminal, Customer shall nonetheless be responsible for all charges and taxes, and shall continue to be bound by the terms and conditions of this Agreement, the same as if Commodity had not been sold, exchanged, or transferred by Customer.

19.   GENERAL

This Agreement, together with any and all exhibits hereto, constitutes the entire agreement between KINDER MORGAN and Customer and supersedes any and all terms and conditions which may be contained in any purchase orders issued by Customer prior or subsequent to this Agreement. This

Agreement may not be amended, altered, or changed except by written agreement signed by both parties. The remedies herein provided for shall not be exclusive, but shall be cumulative and shall be in addition to all other remedies available at law or in equity.  The waiver by either party of any right of either party hereunder, at any time, shall not serve to waive any other such right nor shall such waiver operate as a waiver of the right so waived at any future date in connection with another default or a subsequent recurrence of the same default.  Customer and KINDER MORGAN agree that the terms of this Agreement shall be binding upon both parties when KINDER MORGAN receives Customer's Commodity for storage and handling at the Terminal or when both parties have executed this Agreement, whichever occurs first. The parties agree that future amendments to this agreement may be memorialized by the exchange of facsimile copies on equipment using plain paper.  This Agreement shall be construed in accordance with the laws of the state in which the Terminal is located.

20.   HEADINGS

The headings of the paragraphs of this Agreement have been inserted for convenience of reference only and are not to be considered part of this Agreement and shall in no way affect the interpretation of any of the provisions of this Agreement.

21.   THIRD PARTY BENEFICIARIES

There are no third party beneficiaries to this Agreement hereto and the provisions of this Agreement shall not impart any legal or equitable right, remedy or claim enforceable by any person, firm or organization other than the Parties and their permitted successors and permitted assigns.

22.   CONFIDENTIALITY

Each party agrees to hold in confidence, and not to disclose to third parties or use for any purpose other than performance of its obligations hereunder, all or any information (including the location and type of work performed hereunder) that is received or ascertained directly or indirectly, from the other party or its representatives ("Information").  Each party shall ensure that its employees, subcontractors and suppliers who may be exposed to Information comply with the confidentiality requirements of this Agreement. Nothing herein contained should preclude a party from providing information to any federal, state or local agency or agencies to the extent such party is required to do so by applicable laws, rules, codes or regulation of any federal, state or local agency or agencies.

Neither party shall have confidentiality obligations with respect to information that:

i.      is or becomes part of the public knowledge through no fault of such party or its representatives;

ii.     is received from a third-party without any obligation of confidence; and

iii.    is in such party's possession prior to the effective date of this Contract and is not received in contemplation of this Contract.

23.   DEFINITIONS

"Actual Cost" means the price paid by Customer, excluding transportation or other indirect costs, or, if Customer is the manufacturer, the manufacturing cost.  "Ton" means [Standard U.S. Ton/Short Ton]. "Month" means a period extending from a date in one calendar month up to, but not including, the corresponding date in the following month.  "Contract Year" means a 12 month period commencing on the commencement date of this Agreement or on an anniversary of such commencement date, and ending 12 months later.  "Overtime" means work performed outside the Regular Terminal Operating Hours. "Person" means individual and entities and any combinations thereof.  "Schedule" means any schedule of

- 13 -

LA ASH, INC.

commercial terms applicable to one or more Terminals attached to this Agreement by the parties from time to time.   "Terminal" or "Terminals" means any terminal covered by a Schedule attached to this Agreement.   The Unrecovered Capital Expenditures shall in no event be less than zero.   "Year" means a period of twelve (12) consecutive months.

IN WITNESS WHEREOF, this Agreement has been executed by the parties thereto.

LA Ash, Inc.

BY: _____

TITLE: PRESIDENT

DATE: 4/4/07

Kinder Morgan Port Sutton Terminal LLC

BY: _____

TITLE: General Manager

DATE: 06/22/2007

- 14 -

**First Amendment**
**To**
**Storage and Handling Agreement**

This First Amendment to Storage and Handling Agreement (this "Amendment") is entered into this 22nd day of July, 2009 by and between Kinder Morgan Port Sutton Terminal LLC ("Kinder Morgan") and L.A. Ash, Inc. ("Customer") with reference to the following facts:

A.    Kinder Morgan and Customer are parties to that certain Storage and Handling Agreement dated January 1, 2007 relating to Kinder Morgan's Tampaplex Terminal ("Agreement").

B.    Customer desires for Kinder Morgan to remove their ash from the silo storage, truck to the Kinder Morgan outside storage area at Tampaplex and till the material into the ground to be used as a base pad in the storage area.

C.    The parties desire that the work be governed by the Agreement, subject to the terms and conditions contained herein.

NOW, THEREFORE, in consideration for the covenants and conditions contained herein, along with other valuable consideration, the adequacy of which is hereby acknowledged, the parties agree as follows:

1. This Amendment shall extend the Agreement until financial obligations are met below.

2. Customer and Kinder Morgan agree to the following terms and conditions for the removal and application of the ash:

| Costs for project: | Trucking from silo | $57,000 |
|---|---|---|
| | Tilling in ground | $67,300 |
| | O/S Storage fees | $270,521 |
| | Total | $394,821 |
| Less sale price of ash @$19.29/ton | | $235,521 |
| BALANCE OWED TO Kinder Morgan | | $159,300 |

3. Customer to pay $70,000 as payment towards the $159,300 within 30 days of this amendment execution.

4. Customer to pay 6 equal payments of $14,884.33 as payment for the balance of $89,300.00 (September 1, 2009, October 1, 2009, November 1, 2009, December 1, 2009, January 1, 2010 and February 1, 2010)

5. Customer and Kinder Morgan agree that completion of the application and payment outlined above shall complete all obligations of both parties.

6. Except as set forth herein, the terms and conditions contained in the Agreement shall remain in full force and effect.

Kinder Morgan Port Sutton Terminal LLC    L.A.Ash, Inc.

_____    _____

Date: _____    Date: _____9/31/09_____

Exhibit B

LA ASH, INC.

commercial terms applicable to one or more Terminals attached to this Agreement by the parties from time to time. "Terminal" or "Terminals" means any terminal covered by a Schedule attached to this Agreement. The Unrecovered Capital Expenditures shall in no event be less than zero. "Year" means a period of twelve (12) consecutive months.

IN WITNESS WHEREOF, this Agreement has been executed by the parties thereto.

LA Ash, Inc.

BY: _____

TITLE: PRESIDENT

DATE: 4/4/07

Kinder Morgan Port Sutton Terminal LLC

BY: _____

TITLE: General Manager

DATE: 06/22/2007



Akerman Senterfitt
ATTORNEYS AT LAW

Dallas
Denver
Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

SunTrust Financial Centre, Suite 1700
401 East Jackson Street
Tampa, Florida  33602-5250

www.akerman.com

813 223 7333 tel   813 223 2837 fax

*Anthony J. Cuva*
*Direct Dial: (813) 209-5049*

January 21, 2010

<u>*Via E-mail and Certified Mail*</u>

Gary Livengood, C.E.O. (*glivengood@livmgmt.com*)
Tommy Stewart, Director, Sales (*stewart@laash.net*)
L.A. Ash, Inc.
2651 Napoleon Street
Sulfur, Louisiana  70663

   Re:   *Kinder Morgan v. L.A. Ash, Inc.*

Dear Sirs:

     This law firm represents Kinder Morgan in the above-referenced matter and has been retained to collect amounts owed from L.A. Ash, Inc. pursuant to the Terminal Agreement and Storage and Handling Agreement.

     As you know, L.A. Ash entered into a contract with Kinder Morgan dated January 1, 2007, under which Kinder Morgan agreed to store and handle L.A. Ash's bed ash at its Tampaplex terminal in Tampa, Florida.  In July 2009, Kinder Morgan entered into a First Amendment to such Agreement.  Pursuant to the First Amendment, L.A. Ash owes $144,421.65. We enclose invoices for such amounts.

     Additionally, L.A. Ash presently has stored at Tampaplex in the approximate quantity of 12,000 tons.  Kinder Morgan requests that you dispose or remove such property from its warehouse promptly.  If the product is not removed or disposed of, we will have no option but to file a warehouse lien on such property and dispose of it in accordance with the Uniform Commercial Code as adopted by the Florida Statutes.

{TP560677;1}

Exhibit C

Gary Livengood, C.E.O.
Tommy Stewart, Director, Sales
L.A. Ash, Inc.
January 21, 2010
Page 2

────────────────────────

Additionally, if the outstanding balance is not made current by January 29, 2010 we will file a lawsuit to collect the amounts owed and pursue all legal remedies available under the contract.

Should you have any questions regarding this matter, please contact the undersigned.


Sincerely,

AKERMAN SENTERFITT

Anthony John Cuva

AJC:kb


Notice Pursuant to Fair Debt Collection Practices Act, 15 U.S.C. §1692(g)

This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you dispute the validity of the debt, or any portion of the debt, within 30 days after your receipt of this letter, the debt will be assumed to be valid. If you notify us in writing within 30 days after your receipt of this letter that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Any written request should be addressed to: Anthony J. Cuva; Akerman Senterfitt, 401 E. Jackson Street, Suite 1700, Tampa, FL 33602.



Tampaplex Terminal
4801 Port Sutton Road
Tampa, FL 33619

INVOICE                                          PER CONTRACT TERM

LA ASH, INC:                      Remit To:
ATTN: ROBERT HENSON               To pay by check:
P.O. BOX 1728                     KINDER MORGAN Operating LP "C"
SULPHUR, LA 70664                 Dept. 3063
                                  PO BOX 201607
                                  Dallas, TX 75320-1607

                                  To pay by wire:
                                  Wells Fargo Bank, NA
                                  ABA # 121 000 248
                                  Account #412 104 8373

| TERMINAL | CONTRACT NO. | CUSTOMER CODE | INVOICE NO. | INVOICE DATE | AMOUNT |
|---|---|---|---|---|---|
| 474 - TAMPAPLEX | 474-0041 | 11008-01 | 100923838 | 09/07/2009 | |

CHARGES FOR YOUR ACCOUNT FOR AUGUST 2009

ASH APPLICATION SETTLEMENT                         $          70,000.00
  PARTIAL PAYMENT

                        PLEASE PAY THIS AMOUNT     $          70,000.00

PLEASE NOTE REMIT TO LOCKBOX ON INVOICE

Page 1 of 1

Please refer all questions to Cheri Rudolph (813)620-2705

 KINDER MORGAN
ENERGY PARTNERS, L.P.

Tampaplex Terminal
.4801 Port Sutton Road
Tampa, FL 33619

INVOICE

PER CONTRACT TERM

LA ASH, INC.
ATTN: ROBERT HENSON
P.O. BOX 1728
SULPHUR, LA 70664

Remit To:
To pay by check:
KINDER MORGAN Operating LP "C"
Dept. 3003
PO BOX 201607
Dallas, TX 75320-1607

To pay by wire:
Wells Fargo Bank, NA
ABA # 121 000 248
Account #412 104 9373

| TERMINAL | CONTRACT NO. | CUSTOMER CODE | INVOICE NO. | INVOICE DATE | AMOUNT |
|---|---|---|---|---|---|
| 474 - TAMPAPLEX | 474-0041 | 11906-01 | 100952342 | 09/16/2009 | |

SEPTEMBER 2009 STORAGE & HANDLING OF YOUR COMMODITIES

FOR TANK NUMBER

TK

ASH APPLICATION SETTLEMENT - PARTIAL PAYMENT

|  | | | |
|---|---|---|---|
| 1.00  CALENDAR MONTH(S) | $ | 14,884.33 /CALENDAR MONTH(S) | $  14,884.33 |

PLEASE PAY THIS AMOUNT $  14,884.33

PLEASE NOTE REMIT TO LOCKBOX ON INVOICE

Please refer all questions to Cheri Rudolph (813)620-2706



**KINDER MORGAN**
ENERGY PARTNERS, L.R

Tampaplex Terminal
4801 Port Sutton Road
Tampa, FL 33619

INVOICE                                                                                PER CONTRACT TERM

LA ASH, INC.
ATTN: ROBERT HENSON
P.O. BOX 1728
SULPHUR, LA 70664

Remit To:
To pay by check:
KINDER MORGAN Operating LP "C"
Dept. 3003
PO BOX 201607
Dallas, TX 75320-1607

To pay by wire:
Wells Fargo Bank, NA
ABA # 121 000 248
Account #412 104 9373

| TERMINAL | CONTRACT NO. | CUSTOMER CODE | INVOICE NO. | INVOICE DATE | AMOUNT |
|---|---|---|---|---|---|
| 474 - TAMPAPLEX | 474-0041 | 11908-01 | 1009590C2 | 09/29/2009 | |

OCTOBER 2009 STORAGE & HANDLING OF YOUR COMMODITIES

FOR TANK NUMBER

TK

ASH APPLICATION SETTLEMENT - PARTIAL PAYMENT

|  | 1.00 CALENDAR MONTH(S) | $ | 14,884.33 /CALENDAR MONTH(S) | $ | 14,884.33 |
|---|---|---|---|---|---|
|  |  |  | PLEASE PAY THIS AMOUNT | $ | 14,884.33 |

PLEASE NOTE REMIT TO LOCKBOX ON INVOICE

Please refer all questions to Cheri Rudolph (813)920-2705

## NOTICE OF ENFORCEMENT OF WAREHOUSEMAN'S LIEN

TO:   LA ASH, INC.

## CERTIFIED MAIL

Gary Livengood, President
2651 Napoleon Street
Sulphur, Louisiana  70663

Rick J. Norman, Registered Agent
145 East Street
Lake Charles, Louisiana 70601

Pursuant to Section 677.210, Florida Statutes, Kinder Morgan notifies you that it will enforce its lien by public sale of the approximately 12,000 TONS OF BED ASH currently stored at Kinder Morgan's facility.

Kinder Morgan's lien arises from LA Ash's default under the Storage and Handling Agreement and Amendment between the parties. The amount due to Kinder Morgan is $159,300.00, as described in the First Amendment to Storage Handling Agreement.

SALE SCHEDULED AS FOLLOWS:

**FRIDAY, MARCH 19, 2010 at 10:00 a.m.**

Location:   **KINDER MORGAN**
**4801 PORT SUTTON ROAD**
**TAMPA, FLORIDA 33619**

Kinder Morgan may satisfy its lien from the proceeds of the sale or may purchase the bed ash pursuant to the Section 677.210, Florida Statutes.

GOVERN YOURSELVES ACCORDINGLY.

Direct All Questions to:
Akerman Senterfitt,
c/o Anthony J. Cuva, Esquire,
(813) 223-7333
Attorneys for Kinder Morgan.

{TP565379;1}

Exhibit _D_